UNITED STATES of America
v.
Abe LIPSKY, Appellant.

No. 13948.

United States Court of Appeals
Third Circuit.

Argued Sept. 18, 1962.

Decided Oct. 26, 1962.

Certiorari Denied Jan. 7, 1963.

See 83 S.Ct. 510.

James Francis Lawler, Philadelphia, Pa. (Ostroff, Lawler & Baker, Philadelphia, Pa., on the brief), for appellant.

John J. Francis, Jr., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., John N. Ellsworth, Asst. U. S. Atty., on the brief), for appellee.

Before MARIS, McLAUGHLIN and GANEY, Circuit Judges.

MARIS, Circuit Judge.

The defendant, Abe Lipsky, appeals from a judgment entered in the District Court for the District of New Jersey on a jury verdict of guilty under the fifth count of an indictment charging him with conspiring with five others to steal, unlawfully transport, convert to their own use, receive, possess and conceal goods in violation of sections 371, 659 and 2314 of title 18, United States Code. The indictment was dismissed as to one co-defendant, Louis Marino; the other four co-defendants, Francis J. Gianatiempo, Patrick J. De Lellis, Joseph J. Murro and Michael A. Lo Sasso, entered pleas of guilty, and the defendant Lipsky alone was tried. He was convicted and sentenced to one year imprisonment. This appeal followed. Reversal of the judgment is sought on the grounds that the evidence was insufficient to sustain the verdict of the jury and that the defendant Lipsky was prejudiced by cross-examination. We find no merit in either of these contentions.

The evidence produced by the Government at the trial tended to prove, inter alia, that some weeks prior to the theft it was agreed between Gianatiempo, Lo Sasso, De Lellis and Murro that Gianatiempo, a truck driver, would take a loaded tractor-trailer and deliver it to a pre-arranged destination, that Lo Sasso with De Lellis would dispose of the stolen merchandise, and that the proceeds would be divided among them. That night Lo Sasso met the defendant Lipsky with whom he discussed disposing of the stolen merchandise and Lipsky "set" a price at "twenty-five percent of the wholesale price" of any merchandise. They exchanged telephone numbers. Prior to the theft, Lo Sasso and Gianatiempo met the defendant Lipsky who inquired whether Gianatiempo knew what merchandise would be on the trailer and whether there was a possibility of obtaining whiskey. Gianatiempo described the modus operandi and told Lipsky that he would not know what was on the trailer since it would be sealed.

Lipsky stated that regardless of the kind of merchandise, the price would be twenty-five percent of its wholesale value. Following the theft, the defendant Lipsky, with Lo Sasso, visited the place where the stolen merchandise was stored. He examined some of it and told Lo Sasso to ascertain the dollar value from the packing slips. Shortly thereafter the defendant brought to the scene one Anthony Agresti, a prospective buyer, who examined the merchandise and set a price.

The defendant Lipsky took the stand in his own defense. He admitted that he met Lo Sasso before the date of the theft, that they exchanged telephone numbers and that he examined the merchandise at the place where it was stored. But he said that the merchandise was comprised of small lots of a variety of items which he could not use and he brought Agresti in as a prospective buyer. His defense was that he had solicited Lo Sasso to purchase eggs from him at which time Lo Sasso inquired whether he would be interested in buying some stress merchandise [1] and that he did not know that the merchandise was stolen.

We are satisfied that the jury was entitled from this evidence to find, as it did, that the defendant Lipsky was a member of the conspiracy charged in the indictment. It is true, of course, that he was not an original member of the conspiring group. The evidence, however, supports the finding that he subsequently joined the conspiracy before it was consummated by the theft of the tractor-trailer and that he assumed an important and indeed essential function in the conspiracy. This was to assure his confederates that if they proceeded with their plan to steal the trailer they would be able to secure from the stolen merchandise the money which it was their basic object to obtain. He thus played a part in the conspiracy which, although different from that of his confederates, was necessary to the accomplishment of its objective. See Lefco v. United States, 3 Cir. 1934, 74 F.2d 66, 68–69.

 The contention of defendant Lipsky that he was prejudiced by his cross-examination requires no extended discussion. While Government counsel did press him for an explanation of his failure at the time of arrest to tell the arresting agent the story which he told on the witness stand this was not improper in view of the fact that he had at the time of arrest told the officer a different story. Under the circumstances, the Government clearly had the right through cross-examination to explore the reason for the difference and to attempt to secure the defendant's explanation of it.

The judgment of the district court will be affirmed.

---

1. The defendant defined stress merchandise to mean "bankrupt stock, job lots, anything that somebody wants to get rid of."